UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN KURIAKOSE,

              Plaintiff,                              Case No. 14-12972

v.                                          Paul D. Borman
                                          United States District Judge

VETERANS AFFAIRS ANN
ARBOR HEALTHCARE SYSTEM,

              Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 4)

      This matter is before the Court on Defendant's Motion to Dismiss.  (ECF No. 4.)  Plaintiff

filed a Response (ECF No. 7) and Defendant filed a Reply (ECF No. 8).  The Court held a hearing

on February 12, 2015.  For the reasons that follow, the Court converts the motion to one for

summary judgment and GRANTS the motion.[1]

_____

[1] The Court may consider public records and other facts capable of being judicially noticed without
converting a motion to dismiss to one for summary judgment.  *New England Health Care Employee
Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).  Specifically, "[t]he court
may take judicial notice of the administrative record reflecting plaintiff's exhaustion of
administrative remedies without converting the motions into ones for summary judgment." *Allen v.
Shawney*, No. 11-10942, 2013 WL 2480658, at *12 (E.D. Mich. June 10, 2013) (quotation marks
and citation omitted) (alteration in original).  However, in this case, because both parties rely on
exhibits and matters that are outside the administrative record and are not attached to or referred to
in Plaintiff's Complaint, the Court must convert the motion to dismiss to one for summary judgment.
*See* Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6) or 12(c), matters outside the
pleadings are presented to and not excluded by the court, the motion must be treated as one for
summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present
all the material that is pertinent to the motion.").  "Whether notice of conversion of a motion to
dismiss to one for summary judgment by the court to the opposing party is necessary depends upon
the facts and circumstances of each case. Where one party is likely to be surprised by the
proceedings, notice is required." *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir.

**INTRODUCTION**

This action involves Plaintiff's claim that her employer, the Defendant Veterans Affairs Ann Arbor Healthcare System (the "VA"), through its agents and particularly through the acts of Dr. Wessam Bou-Assaly, created and permitted to exist a hostile work environment in which Plaintiff was subject to sexual harassment and retaliated against when she complained about the harassment she alleges she endured. Defendant now moves to dismiss the Complaint, claiming that Plaintiff failed to properly exhaust her administrative remedies which required that she timely file a formal

---

1998) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir.1975)).

In this case, both parties submitted substantial evidence relating to matters outside the pleadings and outside the administrative record. Defendants submitted multiple witness declarations, emails and VA records. Plaintiff submitted in response to these exhibits two affidavits, one from Plaintiff and one from her treating psychiatrist, as well as correspondence and emails to rebut the exhibits relied on by Defendant and to attempt to create a question of fact on the issue of exhaustion. Indeed, at the hearing on the motion, Plaintiff's counsel expressly stated that certain evidence submitted by Plaintiff was sufficient to create "at least a question of fact regarding whether equitable tolling or estoppel should apply."

The Court has waited three months to issue this Opinion and neither party has sought leave to supplement the record, even though Plaintiff's counsel indicated at the hearing that he intended to supplement Dr. Shiener's Affidavit with Dr. Shiener's report. Although having had ample time to do so, Plaintiff never filed a report with the Court and never objected to the Defendant's submission of materials outside the pleadings. Rather, Plaintiff vigorously responded with additional matters extrinsic to the pleadings. *See Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir. 2000) ("Because the parties both submitted numerous exhibits fully addressing the [] argument for dismissal, they had sufficient notice that the district court could consider this outside material when ruling on the issues presented in the [] motion to dismiss and could convert it into a motion for summary judgment under Fed. R. Civ. P. 12(b).") (alterations added).

Given these facts and circumstances, because both parties submitted, and urged the Court to rely on, matters outside the pleadings and administrative record, neither party can claim surprise and the Court will convert the motion to dismiss to one for summary judgment. *See Abernathy v. Runyon*, 156 F.3d 1228, at *1 (6th Cir. 1998) (noting that plaintiffs could have attempted to convert defendant's motion to dismiss for failure to exhaust to one for summary judgment by submitting evidence attempting to show a question of fact on the issue of exhaustion); *James v. Ann Arbor Public Schools*, No. 09-11230, 2010 WL 3084335, at *3 (July 15, 2010) (converting motion to dismiss for failure to exhaust administrative remedies to motion for summary judgment where both parties submitted, and the court considered, matters outside the pleadings) (Hluchaniuk, MJ).

Equal Employment Opportunity (EEO) Complaint with Department of Veterans Affairs and timely contact an EEO Counselor, both statutory prerequisites to filing her Title VII claim against the VA.

## I.     BACKGROUND

### A.     Plaintiff's Claims of Sexual Harassment

Plaintiff Dr. Jean Kuriakose is a radiologist at the Defendant VA who claims that she was subject to a sexually hostile working environment created by the sexually assaultive conduct of one of her colleagues, Dr. Wessem Bou-Assaly.  Plaintiff claims that Dr. Bou-Assaly was known to the VA Hospital as a sexual predator who harassed many other females working at the VA but that the VA turned a blind eye to his conduct.

In addition to her employment at the VA, Plaintiff was a lecturer at the University of Michigan, and Dr. Bou-Assaly was an assistant professor of Radiology at the University of Michigan.  Compl. ¶¶ 10, 11.  Plaintiff claims that in October, 2012, she met with the chairman of the Radiology Department at the University of Michigan, Dr. N. Reed Dunnick, and told him that women were treated disrespectfully.  According to Plaintiff, Dr. Dunnick ignored her concerns and moved to the next topic of discussion.  Compl. ¶¶ 16-17.  The University of Michigan is not a party in this case.

Plaintiff alleges that Dr. Bou-Assaly became increasingly abusive and, in September, 2013, touched her and other female workers, made sexually suggestive comments on a regular basis, inappropriately texted female workers outside of work hours, and on December 6, 2013, exposed his penis to Plaintiff and touched her breast when she attempted to get up and walk out of the room.  Compl. ¶ 19.  Plaintiff reported this incident to local police which led to the filing of criminal charges of fourth degree criminal sexual conduct against Dr. Bou-Assaly and an ultimate plea by

Dr. Bou-Assaly to indecent exposure. (Pl.'s Resp. Ex. A, Register of Actions.)

Plaintiff claims to have made several complaints to her employer about Dr. Bou-Assaly's conduct but alleges that the VA never took action despite being on notice of his inappropriate and dangerous behavior. Compl. ¶ 21-23. Plaintiff's Complaint alleges that she was treated differently based on unlawful consideration of her sex (Count I), was subject to a hostile work environment (Count II), was retaliated against by the VA for her complaints of sexual harassment (Count IV), and claims that the VA breached duties owed to her by inadequately hiring, training, retaining, supervising and not reprimanding Dr. Bou-Assaly (Count III). Plaintiff claims to have suffered severe depression, Post-Traumatic Stress Disorder and Anxiety, which she alleges has severely affected her personality and ability to cope with her personal and professional life. In support of her claim of psychological trauma, Plaintiff attaches the Affidavit of Dr. Gerald Shiener who conducted a psychiatric examination of Plaintiff on September 4, 2014, and concluded that Dr. Bou-Assaly's assaults on Plaintiff have left her emotionally and psychologically traumatized such that she was unable to report the sexual assault to her employer within the 45 days allowed under the applicable statutory exhaustion requirements. (Pl.'s Resp. Ex. B, October 22, 2014 Affidavit of Dr. Gerald Shiener ¶¶ 1-11.)

### B.    Plaintiff's Contacts With the Equal Employment Opportunity Office

Defendant moves to dismiss on the basis that Plaintiff failed to timely exhaust her administrative remedies because she failed to file a Formal Complaint with the agency within the statutorily prescribed fifteen (15) day time frame after receiving her Notice of Right to File a Discrimination Complaint. Defendant also claims that as to her claims of gender-based harassment, Plaintiff did not seek EEO counseling with regard to the sexual harassment conduct, the last instance

2:14-cv-12972-PDB-MKM   Doc # 10   Filed 05/21/15   Pg 5 of 23   Pg ID 165

of which occurred on December 6, 2013, within the statutorily required 45-day period for reporting such conduct. Plaintiff does not dispute that she did not file a Formal Complaint within 15 days of receiving her Notice of Right to File and does not deny that she failed to seek counseling within the 45-day window.  She attempts to excuse her failure to heed both deadlines, claiming that she "thought" she had filed a timely Formal Complaint based upon communications from the EEO Office and that she was too traumatized by the sexual harassment to understand and appreciate the 45-day limitation on the time within which she was required to seek counseling.

Plaintiff claims that she was "under the impression" that a Formal Complaint had been filed based upon communications she received from her EEO Counselor, Lydia Ward.  (Pl.'s Resp. Ex. C, October 23, 2014 Affidavit of Jean Kuriakose.)  Plaintiff states that she contacted another EEO Counselor, Diana Cass, on February 18, 2014, with regard to "the degrading and humiliating sexual harassment" she had been subject to while working at the VA Hospital.  Kuriakose Aff. ¶ 1. Plaintiff claims she made contact with the Office of Resolution Management for the Department of VA Affairs on March 3, 2014, to alert them of the sexual harassment she had undergone while working at the VA Hospital.  *Id*. ¶ 2.  Plaintiff states that she "complied with all requirements to assert her rights" and "actively participated in the complaint process and maintained contact" with her EEO counselor, Lydia Ward, who "failed to tell [Plaintiff] that a formal complaint had not been filed," and "blatantly disregarded [Plaintiff's] concerns."  *Id*. ¶¶ 2-5.  In support of her claims that she participated in the complaint process and was misled by Ms. Ward, Plaintiff attaches to her response to the motion to dismiss a series of emails between herself and Ms. Ward which begins with a March 31, 2014 Email from Ms. Ward to Plaintiff indicating that Plaintiff must respond to the email to indicate whether she wanted to "go forward with this EEO Complaint."  (Pl.'s Resp. Ex.

5

D, March 31, 2014 Email.)  On April 2, 2014, Plaintiff responds that since she had "complained to the you/ORM [sic], the matter of [her] having to move [her] work station, and changes of tour of duty have not been pursued."  *Id*. April 2, 2014 Email.  Plaintiff also mentions in this email that "since there is a criminal persecution [sic], of the matter leading up to these events which I have been called as a witness, I am a little uncertain as to what to do with the ORM paperwork and what needs to be done etc."  *Id*.  Ms. Ward's responsive email is somewhat puzzling.  First, she indicates that since Plaintiff's work station and tour of duty had not been changed, that issue appears not to have resulted in any work related harm.  She further states that: "You are a witness to the criminal persecution; therefore, it does not appear that you were harmed.   ORM paperwork should be completed and return unless it is you [sic] decision to withdraw your EEO Complaint."  *Id*. April 2, 2014 Email.

Defendant provides the Declaration of Tami S. Press, Regional EEO Officer for the Department of Veterans Affairs, Office of Resolution Management ("ORM") and the custodian of the EEO administrative records relating to the Great Lakes Region, including the file relating to Plaintiff.  (Defs.' Mot. Ex. 1, Sept. 23, 2014 Declaration of Tami S. Press ¶¶ 1-3. Ms. Press explains that all ORM EEO records are kept in an electronic system known as Complaints Automated Tracking System ("CATS") that keeps track of every record received from or sent to an EEO complainant. Press Decl. ¶ 4.  The ORM file relating to Plaintiff indicates only that she made initial contact on March 3, 2014, received a Notice of Right to File a Discrimination Complaint dated April 1, 2014 with a UPS Delivery Receipt dated April 3, 2014 and an ORM Counselor Report (content unknown) dated April 9, 2014.  *Id*. ¶ 5.  The CATS records do not indicate that Plaintiff ever filed a Formal Complaint.  *Id*. ¶ 7.

6

Defendant also provides the Initial Contact and Interview Sheet from Plaintiff's March 3, 2014 contact which indicates that Plaintiff complained about a change in duty hours that occurred on February 21, 2014. (Def.'s Mot. Ex. 2.) The Contact Sheet also explains as follows: "The AP stated she was sexually assaulted last year by a co-worker who was firred [sic]. She stated that after that she has been subjected to harassment the latest issue coming in the form of a Tour of duty change." *Id*. at 2. The Contact Sheet suggests that the current complaint related to the change in Plaintiff's tour of duty which Plaintiff claimed was related to the earlier sexual harassment.

Defendant also attaches the Declaration of Lydia Ward, Plaintiff's EEO Counselor, who confirms that on April 1, 2014, she sent Plaintiff a Notice of Right to File Formal Complaint which explained in bold letters that Plaintiff had 15 days from her receipt of the Notice to submit her Formal Complaint. (Def.'s Mot. Ex. 3, October 14, 2014 Declaration of Lydia Ward ¶ 5.) Ms. Ward further declares that the EEO never received a Formal Complaint from Plaintiff or from her lawyer within the 15-day time frame. *Id*. ¶¶ 6-7. Ms. Ward states that she did receive a communication from Plaintiff's lawyer on or about April 30, 21, 2014, representing that Plaintiff had filed a Formal Complaint but after confirming that none was ever received from or filed by Plaintiff, Ms. Ward did not respond to the letter because she had closed the file. Nor did Ms. Ward respond to Plaintiff's attorney's July 21, 2014 letter seeking a copy of Plaintiff's file and a status update, because the file was closed and the letter therefore required no response. *Id*. ¶¶ 7-8; Pl.'s Resp. Exs. D, F, April 30, 2014 and July 21, 2014 Correspondence from Jonathan Marko to Ms. Ward. The Notice of Right to File paperwork, attached to Defendant's motion, clearly explains the process that Plaintiff must go through, and the time frame in which she must complete the process, and explains exactly where and to whom a Formal Complaint should be sent. (Def.'s Mot. Ex. 4.) Defendants also attach the

UPS shipping information which indicates that an adult signature was required and that the package was delivered to Plaintiff's address on April 3, 2014 and signed for by "Jean." (Def.'s Mot. Ex. 5.)[2]

Defendant attaches Ms. Ward's Counselor Report which verifies the dates on which she was contacted by Plaintiff and the date on which she sent the Notice of Right to File. (Def.'s Mot. Ex. 6.) The Counselor Report states that although Plaintiff indicated that she was not forced to change her tour duty, "she did not withdraw her complaint" and was informed during a "final interview" that any Formal Complaint of Discrimination would have to be based on the claim listed in her complaint regarding change of tour of duty and or a claim that is "like or related to" that claim. *Id.* at 2-3.

Finally, Defendant attaches the Declaration of Diana Cass, the EEO Manager for the Department of Veterans Affairs, Ann Arbor VA Healthcare System, who handled the initial complaint from Plaintiff and first met with Plaintiff around February 19, 2014. (Def.'s Mot. Ex. 7, October 9, 2014 Declaration of Diana Cass ¶¶ 1-4.) Ms. Cass referred Plaintiff to Ms. Ward, her EEO Counselor, for the informal stage of the complaint process. *Id.* ¶¶ 4-6. Ms. Cass never received a Formal Complaint from Plaintiff and has no knowledge that a timely Formal Complaint was ever filed as required by law. *Id.* ¶ 6.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after

---

[2] Plaintiff's counsel asserted at the hearing on Defendant's motion that he never saw the April 3, 2014 Right to File Notice in the file he received from Plaintiff. This does not excuse *Plaintiff's* failure to have timely filed her Formal Complaint after receiving that Notice. Notably, Plaintiff's Affidavit does not deny receipt of the April 3, 2014 package and Plaintiff provides no evidence to rebut the UPS Delivery Notification receipt that demonstrates receipt by "Jane" on April 3, 2014 at 1:17 p.m. The documentation submitted by Defendant is sufficient to charge Plaintiff with receipt of the April 3, 2014 Notice of Right to File.

8

the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

9

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits,

depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."  *Celotex*, 477 U.S. at 323-34.

### III.   ANALYSIS

Plaintiff does not deny the facts presented in the various affidavits and declarations submitted by the Defendant.  In fact, she also relies on the March 31, 2014 to April 2, 2014 Email exchanges to support her claim that she was "under the impression" that a Formal Complaint had been timely filed.  Plaintiff alleges that she interpreted Ms. Ward's statement in the March 31, 2014 Email that Plaintiff should respond if she "wish[ed] to go forward with this EEO Complaint," to mean that a Formal Complaint in fact had already been filed.  Also, Plaintiff claims that she interpreted Ms. Ward's statement in her April 2, 2014 Email that Plaintiff should return her ORM paperwork "unless it is you[r] decision to withdraw your EEO Complaint," to mean that Plaintiff already had a Formal Complaint on file.  Plaintiff argues that, based upon these statements by Ms. Ward, Plaintiff was "under the impression" that a Formal Complaint had already been filed, and therefore Defendant should be estopped from claiming that Plaintiff failed to timely file a Formal Complaint.  Plaintiff further acknowledges that she did not complain of the December 6, 2013 sexual harassment by Dr. Bou-Assaly until 67 days later, outside the 45 day time period required under the statute.  She claims that this delay is excused by the fact that she was too traumatized by Dr. Bou-Assaly's conduct to report the harassment in a timely fashion.

11

### A.      Plaintiff's Estoppel-Based Argument

Title VII "provides the exclusive remedy for claims of discrimination in federal employment." *Brown v. General Servs. Admin.*, 425 U.S. 820, 834 (1976).  "The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of remedies, as set forth in [the EEOC regulations]." *Hunter v. Sec'y of the United States Army*, 565 F.3d 986, 993 (6th Cir. 2009) (internal quotation marks and citation omitted) (alterations in original).  Under the EEOC regulations, an employee seeking to assert a claim under Title VII must timely complete a two-step process.  First, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  Second, "[i]f the matter has not been resolved [after counseling], the aggrieved person shall be informed in writing by the Counselor . . . of the right to file a discrimination complaint," 29 C.F.R. § 1614.105(d), and "[an EEO discrimination] complaint must be filed [with the agency] within 15 days of receipt of the notice required by § 1614.105(d)."  29 C.F.R. § 1614.106(b).  It is well established that a Title VII claim against a governmental agency cannot be maintained unless the administrative steps outlined in these EEOC regulations have been exhausted.  *See, e.g., Brown*, 425 U.S. at 832 (noting that an aggrieved federal employee must meet administrative preconditions before filing a claim of employment discrimination); *Hunter*, 565 F.3d at 993 ("'The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in [the EEOC regulations].'") (Quoting *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991) and *Brown*, 425 U.S. at 829–32).

12

Plaintiff does not dispute that she was required to administratively exhaust her claims by filing a Formal Complaint within 15 days of having received her Notice of Right to File.  It is undisputed Plaintiff never filed, and to this day still has not filed, a conforming Formal Complaint with the EEO.  Notwithstanding these undisputed facts, Plaintiff claims that Defendant should be estopped from claiming that Plaintiff failed to file a Formal Complaint because of statements made by Ms. Ward in her role as Plaintiff's EEO counselor.  Plaintiff alleges that Ms. Ward's remarks in an email gave Plaintiff "the impression" that she had filed a Formal Complaint.  (ECF No. 7, Ex. C, Kuriakose Aff. ¶ 5.)

The Sixth Circuit has held that a claim of estoppel against the government requires a greater degree of misconduct than will sustain a typical estoppel-based claim:

> "Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). "[T]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel.*" LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000). The government, however, "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Instead, "[a] party attempting to estop the government bears a very heavy burden" in sustaining its argument. *Fisher*, 249 F.3d at 444. At a minimum, the party must demonstrate some "affirmative misconduct" by the government in addition to the other estoppel elements. *Ibid*.
>
> Our Court has never announced the definition of "affirmative misconduct." Although we have cases applying the rule, *see, e.g., In re Gardner*, 360 F.3d 551, 559 (6th Cir. 2004), we have not set the bounds of the concept. A review of our sister circuits, however, reflects a general consensus on the definition.
>
> The Ninth Circuit defines "affirmative misconduct" as a deliberate lie or a pattern of false promises. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir.2001) (en banc). In an earlier case it gave a more developed definition, explaining that "[n]either the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000). The Seventh Circuit defines

"affirmative misconduct" as "more than mere negligence. . . . It requires an affirmative act to misrepresent or mislead." *LaBonte*, 233 F.3d at 1053. The Fifth Circuit, in almost identical language, defines "affirmative misconduct" as "something more than merely negligent conduct." *United States v. Marine Shale Processors*, 81 F.3d 1329, 1350 n. 12 (5th Cir. 1996). Instead, "the [government] official must intentionally or recklessly mislead the estoppel claimant." *Id.* at 1350. Lastly, the Fourth Circuit defines "affirmative misconduct" as lying rather than misleading and as malicious, not negligent, conduct. *Keener v. E. Associated Coal Corp.*, 954 F.2d 209, 214 n. 6 (4th Cir.1992).

Finding the common approach of sister circuits prudential, we hold that "affirmative misconduct" is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant. The party asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent.

*Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004).

In response to Defendant's motion, Plaintiff has failed to submit evidence of such intentional or reckless deception sufficient to create a genuine issue of material fact on her claim of estoppel based on Ms. Ward's conduct.  At most, Ms. Ward's March 31, 2014 and April 2, 2014 Emails were ambiguous and potentially confusing.  Any suggestion that Ms. Ward intended to mislead Plaintiff is belied by the fact that she followed up by sending the April 2, 2013 Email and, the very next day, sending Plaintiff the unequivocal Notice of Right to File paperwork.[3]   Additionally, any

---

[3]  The Notice provided in pertinent part:

I have enclosed two copies of the *Notice of Right to File a Discrimination Complaint (including VA Form 4939)*.  At this point you have three options available to you. To help you make your decision, I have also enclosed a copy of EEOC's Guidelines for what it takes to prove discrimination.  Please read these documents carefully and make your decision based on the options below:

 **Option 1:** You can choose to file a formal complaint of discrimination on some or all of the issues.  If you wish to file a formal complaint, please sign and date the *Notice of Right to File a Discrimination Complaint* and VA Form 4939; retain one copy for your records, and return a copy to one of the addresses listed on the *Notice of Right to File Discrimination Complaint.*

14

misconception on Plaintiff's part that she had done everything necessary to file a Formal Complaint should have been questioned, if not completely corrected, when she thereafter received the Notice of Right to File on April 3, 2014, which clearly stated in bold print what had to be done and by what date in order to file a Formal Complaint and continue with her claim of discrimination.  At the very least, this paperwork should have prompted an inquiry on Plaintiff's part regarding the import of those documents which clearly explained that further action was absolutely necessary in order for Plaintiff to proceed with any discrimination claim and file a Formal Complaint.[4]

Plaintiff, as the party seeking to assert a claim of estoppel against a government agent, bears the burden of proving an intentional act by that government agent and that agent's intent.  *Michigan Express*, 374 F.3d at 427.  Defendant's motion demonstrated exactly the steps taken by Ms. Ward

---

**If you decide to file a formal complaint, you have 15 calendar days from receipt of this notice in which to do so.**  Please do not mail the VA Form 4939 to me; your formal complaint must be mailed to one of the addressees listed on the first page of the enclosed Notice of Right to File Discrimination Complaint.

**Option 2:** If after reviewing the EEOC guidelines for what it takes to prove discrimination, you no longer wish to pursue your claims, you can end the process by signing and dating the enclosed withdrawal form, which will indicate your desire not to pursue the claims you discussed with the counselor any further. . . .

**Option 3:** If you take no further action, it will also indicate your wish to not pursue the allegations discussed with the counselor any further.

[4] Plaintiff asks the Court to grant her special indulgence in these matters because she was not "aided by counsel with regard to the EEO process."  ECF No. 7, Pl.'s Resp. 10.  In fact, however, her present counsel, Mr. Marko, was assisting her in these matters during this 15-day period of time, as demonstrated by a March 21, 2014 Freedom of Information Act request that Mr. Marko sent on Plaintiff's behalf seeking information relating to a "December 6, 2014 incident" and Dr. Bou-Assaly.  ECF No. 8, Def.'s Reply Ex. A, March 21, 2014 Correspondence to the FOIA Officers at Veterans Affairs Police.  Also during this period of time, as Mr. Marko explained at the hearing on Defendant's motion, at least by early March, he was representing Plaintiff with regard to her criminal proceedings although he did not formally appear at those proceedings to avoid the indication to the criminal defense attorney that Plaintiff may be seeking damages in civil suit.

to inform Plaintiff of her rights and obligations with regard to further action on her charge of discrimination. Plaintiff has presented insufficient evidence in response to create a genuine issue of fact that Ms. Ward either intentionally or recklessly misled Plaintiff as to the time frame for filing a Formal Complaint. *Michigan Express*, 374 F.3d at 427. Accordingly, even viewing the facts in the light most favorable to the Plaintiff, there is no genuine issue of material fact that Plaintiff failed to file a Formal Complaint within 15 days of receiving her Notice of Right to File and her Complaint is DISMISSED on this basis alone for failure to properly exhaust her administrative remedies.

### B.    Plaintiff's Equitable Tolling Argument

As an alternative, or in addition to her equitable estoppel argument, Plaintiff asserts that she is entitled to equitable tolling of the applicable time frames for pursuing her administrative remedies. Plaintiff does not dispute that she was statutorily required to administratively exhaust her claims by first complaining informally of the alleged discriminatory conduct within 45 days of its occurrence but that she failed to do so within that 45-day time period. She admits that she did not seek EEO counseling regarding Dr. Bou-Assaly's sexual harassment until March 3, 2014, more than 60 days after the latest date (December 6, 2013) on which she claims such conduct occurred. Although Plaintiff acknowledges that she was actively cooperating in the prosecution of criminal charges against Dr. Bou-Assaly in the months of February and March, 2014, she claims that she was too emotionally distraught by Dr. Bou-Assaly's conduct to report the incidents to her employer in early February, 2014. She argues that due to her emotional distress during this period of time, her failure to comply with the 45-day administrative reporting requirement should be excused and the reporting period equitably tolled.

16

The administrative time requirements set forth in the EEOC regulations are subject to equitable tolling in a very narrow set of circumstances. *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95-96 (1990) (recognizing that equitable tolling may apply "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing dealing to pass"). *See also Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (noting that "the forty-five day filing period is not a jurisdictional prerequisite, and can be tolled where principles of equity demand it"). "'At the same time, the Supreme Court has made clear that tolling in a Title VII context should be allowed 'only sparingly.'" *Steiner*, 354 F.3d at 435 (quoting *Irwin*, 498 U.S. at 95). The Sixth Circuit similarly has noted that equitable tolling in the Title VII context is "'available only in compelling cases which justify a departure from established procedures.'" 354 F.3d at 435 (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989)).

The decision whether to allow equitable tolling is fact specific and considers several factors. These factors are not exhaustive and none is controlling:

> In considering whether equitable tolling should apply, we generally look at five factors: (1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint.

*Steiner*, 354 F.3d at 435 (citing *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)).

Plaintiff claims that her failure to timely report the alleged discrimination within the required 45-day period should be excused by her distressed mental state following the alleged assault by Dr. Bou-Assaly. While "[t]he Supreme Court has admonished against broadening equitable

modification of the Title VII limitations periods, [n]onetheless, some federal courts have adopted narrow rules allowing for equitable tolling for mental incompetency." *Moody v. Bayliner Marine Corp.*, 664 F. Supp. 232, 234 (E.D.N.C. 1987) (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147 (1984) and *Lopez v. Citibank, N.A.*, 808 F.2d 905 (1st Cir. 1987)) (alteration added).

Plaintiff relies on *Stanciel v. Potter*, No. 11-11512, 2012 WL 4513612, at *4 (E.D. Mich. Oct. 1, 2012). In *Stanciel*, the court observed that "[m]ost Circuits, including the Sixth Circuit, have allowed equitable tolling based on plaintiff's mental illness." 2012 WL 4513612, at *4 (citing *Barrett v. Principi*, 363 F.3d 1316, 1319-20 (Fed. Cir. 2004) (collecting cases) and *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995)). However *Cantrell*, also a Title VII case, actually involved a claim that plaintiff's *lawyer's* mental disabilities amounted to abandonment of his client and caused plaintiff to miss the statutory deadline. Specifically, the Sixth Circuit reasoned that: " If Cantrell pursued his claim diligently, yet was abandoned by his attorney due to his attorney's mental illness, equitable tolling may be appropriate." 60 F.3d at 1181. In reaching this conclusion, the Sixth Circuit relied on *Burton v. United States Postal Service*, 612 F. Supp. 1057, 1059 (N.D. Ohio 1985) (equitable tolling based on attorney's abandonment of client who pursued his claim as diligently as possible) and *Moody, supra*, 664 F. Supp. at 236 (mental incapacity of plaintiff may warrant equitable tolling of statute of limitations requirements in Title VII action). Thus, although *Cantrell* did not expressly hold that a *plaintiff's* mental disability can serve to toll the Title VII time requirements, it did suggest agreement with such a proposition through citation to *Moody*, a case in which the court did expressly hold that Title VII actions may be tolled by mental incapacity of the plaintiff. 664 F. Supp. 2d at 236. The court in *Moody* noted how narrow such an exception would be and held that tolling in such a situation would be

18

appropriate only in a "rare circumstance." *Id*. at 235.  In *Moody*, the court in fact found that tolling

was not appropriate given the circumstances in that case.  *Id*. at 236.

Thus, Plaintiff bears a heavy burden in establishing a claim of equitable tolling due to mental

incapacity and any claimed mental illness must be shown specifically to have affected the claimant's

ability to understand her legal rights and comply with the applicable deadlines:

> A plaintiff invoking the doctrine of equitable tolling bears the burden of
> demonstrating that the doctrine should apply in his or her case.  *See Kellum v.
> Comm'r of Soc. Security*, 295 F. App'x 47, 49 (6th Cir. 2008); *see also, Jessie v.
> Potter*, 516 F.3d 709, 715 (8th Cir. 2008); *Hardy v. Potter*, 191 F. Supp. 2d 873, 879
> (E.D. Mich. 2002) (*citing Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)). To
> warrant equitable tolling, a plaintiff must do more than show that he or she suffers
> from a disability. *Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993) (indicating
> that cases applying equitable tolling based on mental illness "eschew reliance solely
> on a diagnosis"). The plaintiff must show that a mental disability interfered with his
> or her compliance with the deadline sought to be tolled. *See, e.g., Boos*, 201 F.3d at
> 185 (finding the plaintiff's conclusory and vague claim that she suffers from
> "paranoia, panic attacks, and depression" insufficient to invoke equitable tolling,
> "without a particularized description of how her condition adversely affected her
> capacity to function generally or in relationship to the pursuit of her rights");
> *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998)
> (indicating that to warrant equitable tolling, the plaintiff's disability "must be 'of
> such a nature as to show she is unable to manager her business affairs or estate, or
> to comprehend her legal rights or liabilities.'"); *Miller v. Runyon*, 77 F.3d 189, 191
> (7th Cir. 1996) (recognizing equitable tolling based on the plaintiff's mental illness
> "only if the illness in fact prevents the sufferer from managing his affairs and thus
> from understanding his legal rights and acting upon them."); *Nunnally*, 996 F.2d at
> 5 (stating that "[e]quitable relief is denied if the plaintiff was able to engage in
> rational thought and deliberate decision making sufficient to pursue his claim alone
> or through counsel."); *see also Barrett*, 363 F.3d at 1321 (adopting *Nunnally's*
> standard to assess whether the plaintiff's mental incompetence warrants tolling).

*Stanciel*, 2012 WL 4513612, at *5.

In support of her equitable tolling claim, Plaintiff attaches the Affidavit of Dr. Shiener, which

indicates that Plaintiff was "distraught" following the incidents with Dr. Bou-Assaly and suffered

"depression and PTSD" and was "withdrawn and anxious."  Shiener Aff. ¶¶ 3-6.  Dr. Shiener opines

that people who suffer sexual assault are often ashamed of reporting abuse and "incapable of coming to terms with what happened to them." *Id*. ¶ 8. Dr. Shiener concludes that this occurred in Plaintiff's case and rendered her unable to report the incident within the 45-day time period. *Id*. ¶ 9.[5]

Plaintiff's claim that she failed to contact an EEO counselor within 45 days of December 6, 2013, due to her emotional instability during that time period, also fails to create a genuine issue of material fact with respect to tolling. The observations contained in Dr. Shiener's Affidavit are just the type of "conclusory and vague claim[s] . . . [of] paranoia, panic attacks, and depression [that are] insufficient to invoke equitable tolling, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights." *Stanciel*, 2012 WL 4513612, at *5 (internal quotation marks and citations omitted). Dr. Shiener does not explain how Plaintiff's condition "adversely affected her capacity to function generally or in relationship to the pursuit of her rights." *Id*. Indeed, Defendants have attached Plaintiff's work time sheets for the period of time from December 6, 2013 to the present, which demonstrate that she has worked a full schedule as a radiologist without significant aberration throughout this claimed period of intense emotional disturbance. Interestingly, Plaintiff does not claim in her Affidavit that she was suffering from extreme emotional distress that prevented her from engaging in the process to secure her legal rights. In fact, at least as of February 18, 2014, Plaintiff claims that she was very

_____

[5] Interestingly, at least as early as February 19, 2014, Plaintiff was able to report the incident to the police and to cooperate in a criminal prosecution against Dr. Bou-Assaly for criminal sexual conduct and indecent exposure. (ECF No. 7, Pl.'s Resp. Ex. A, Register of Actions.) Also notable is the fact that Plaintiff's counsel, as he explained at the hearing on Defendant's motion and as discussed *supra*, was representing Plaintiff during the time of the criminal prosecution. Having retained counsel was recognized by the court in *Moody*, *supra*, as a basis for denying plaintiff equitable tolling based on mental incapacity. 664 F. Supp. at 236.

involved in the process and complied with "all requirements to assert her rights." (Kuriakose Aff. ¶¶ 1-4.)  How Plaintiff came to recover so abruptly from her disabling mental instability which prevented her from complying with the 45-day reporting deadline which expired on or about February 6, 2014 so that she was able on February 18, 2014 to being to vigorously pursue her rights and actively participate in the EEO complaint process, goes unexplained.  Dr. Shiener opines that Plaintiff continues to suffer from the same conditions that disabled her from reporting the alleged assault to her employer within the 45-day period.  Shiener Aff. ¶ 10.  Yet, while still suffering from these emotional disturbances, Plaintiff has been able to assert her rights, both at the EEO level and in this Court.  The court in *Moody*, *supra*, observed that such inconsistent behavior led to the inescapable conclusion that plaintiff could have timely complied with the statutory deadlines, although then suffering under the same allegedly disabling mental instability.  "Despite the fact that her condition has not improved, plaintiff has pursued an EEOC claim and subsequently filed this lawsuit. Therefore, the court can only conclude that plaintiff was capable of filing the claim during the filing period."  *Moody*, 664 F. Supp. at 236.  So too here.      Plaintiff has not created a genuine issue of material fact that mental disability prevented her from understanding her legal rights and specifically from contacting and EEO counselor within 45 days of Dr. Bou-Assaly's alleged sexual harassment.

Importantly, Shiener's Affidavit very specifically speaks only to Plaintiff's mental instability during the 45-day period within which Plaintiff was required to begin the informal complaint process.  Shiener Aff. ¶ 9.  Nothing in Shiener's Affidavit speaks to the 15-day period between April 3, 2014 and April 18, 2014, when Plaintiff was required to file her Formal Complaint.  Nothing in the Shiener Affidavit creates a genuine issue of fact regarding Plaintiff 's mental state and ability

21

to understand the legal significance of the deadlines set for in the Notice of Right to File that she received on April 3, 2014.  Her claimed "mental instability," even if it did absolve her failure to timely act within 45 days of the alleged assault, which the Court concludes it did not, cannot justify missing this later deadline. Dr. Shiener's Affidavit does not purport to speak to Plaintiff's mental state in this subsequent time period and the facts, including Plaintiff's own affidavit, indicate that she was vigorously pursuing her rights during this time period.  Accordingly, Plaintiff has failed to establish the existence of a genuine issue of material fact on the issue of equitable tolling as to either the 45-day or the 15-day statutory periods and Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust her administrative remedies.

## IV.    CONCLUSION

The Court concludes that Plaintiff failed to timely file a Formal Complaint within 15 days of receiving her Notice of Right to File paperwork and has failed to create a genuine issue of material fact that equitable estoppel or equitable tolling applies to excuse this failure.  Accordingly, the Court DISMISSES her Complaint for failure to exhaust her administrative remedies.

Although the Court need not reach the issue, the Court also concludes that Plaintiff failed to timely contact an EEO counselor within the 45-day statutory period and has failed to create a genuine issue of material fact that mental instability specifically precluded her from acting timely to contact an EEO counselor.  Accordingly, her Complaint is subject to dismissal for this separate and independent failure to exhaust her administrative remedies.

For the foregoing reasons, the Court GRANTS Defendant's Motion (ECF No. 4) and DISMISSES Plaintiff's Complaint WITH PREJUDICE.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 21, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 21, 2015.


s/Deborah Tofil
Case Manager

23